**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | § § § | |
| **Plaintiff,** | § § | |
| **v.** | § | **CIVIL ACTION NO. 4:25-CV-01056-P** |
| **AMERICAN AIRLINES, INC.,** | § § § | |
| **Defendant.** | § § | |

**DEFENDANT AMERICAN AIRLINES, INC.'S
<u>MOTION FOR PROTECTIVE ORDER AND BRIEF IN SUPPORT</u>**

Pursuant to Federal Rule of Civil Procedure 26, Defendant American Airlines, Inc. ("American") files this Motion for Protective Order and Brief in Support to Plaintiff United States Equal Employment Opportunity Commission's ("EEOC") Request for Inspection, and would respectfully show the Court as follows:

Russell D. Cawyer
State Bar No. 00793482
Lars L. Berg
State Bar No. 00787072
John R. Gillett
State Bar No. 24136859
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 878-3562
Facsimile: (817) 335-2820
Email: russell.cawyer@kellyhart.com
Email: john.gillett@kellyhart.com
Email: lars.berg@kellyhart.com

**ATTORNEYS FOR DEFENDANT
AMERICAN AIRLINES, INC.**

## TABLE OF CONTENTS

I.    Relevant Background ........................................................................................................ 1

II.   Legal Standard................................................................................................................. 4

III.  Argument and Authorities .............................................................................................. 5

    A.    The 2016–2020 Software and Applications Do Not Exist. ............................................. 6

    B.    American's Current Software and Applications are Irrelevant to the EEOC's Claims. . 7

    C.    The Request for Inspection is Unreasonably Cumulative and Duplicative.................... 9

    D.    The Request to Inspect Goes Beyond What Is Permitted By Rule 34. ........................ 10

IV.   Conclusion..................................................................................................................... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bailey v. Stanley Access Techs., Inc.*,
No. 3:14-CV-72-SA-JMV, 2015 WL 6828921 (N.D. Miss. Nov. 6, 2015) ..............................8

*E.E.O.C. v. BNSF Ry. Co.*,
No. 2:12-CV-02634-JWL, 2014 WL 172141 (D. Kan. Jan. 15, 2014) ...................................11

*Harris v. Amoco Prod. Co.*,
768 F.2d 669 (5th Cir. 1985) ................................................................................................4

*In re Terra Int'l*,
134 F.3d 302 (5th Cir. 1998) ................................................................................................4

*Landry v. Air Line Pilots Ass'n*,
901 F.2d 404 (5th Cir. 1990) ................................................................................................4

*LeBoeuf v. K–Mart Corp.*,
888 F.2d 330 (5th Cir. 1989) ................................................................................................8

*Meyer v. City of Chehalis*,
No. 3:22-CV-05008, 2023 WL 4157661 (W.D. Wash. June 23, 2023) ...................................8

*Whole Woman's Health v. Smith*,
896 F.3d 362 (5th Cir. 2018) ................................................................................................4

**Federal Rules**

FED. R. CIV. P. 26(b)(2)(C) ...............................................................................................4, 5, 7, 14

FED. R. CIV. P. 26(b)(2)(C)(i) .................................................................................................9

FED. R. CIV. P. 26(c)(1).........................................................................................................4

Fed. R. Civ. P. 30(a)(2), (d)(1) ...........................................................................................12

Fed. R. Civ. P. 34(a)(1)..................................................................................................10, 14

Fed. R. Civ. P. Rule 30 .......................................................................................................12

Fed. R. Civ. P. Rule 34 ...................................................................................4, 6, 10, 11, 12

## I.    RELEVANT BACKGROUND

In January 2012, American hired Ms. Etha K. Littlejohn ("Littlejohn") as a Reservations Representative, a position in which she worked together with fellow team members across the country to deliver elevated sales and services to customers. In July 2012, Ms. Littlejohn—due to a non-work-related injury—became fully blind. Shortly thereafter, Ms. Littlejohn began a medical leave of absence to recover from her injury. Over four years later, in December 2016, Ms. Littlejohn requested to return to work at American with a reasonable accommodation. After extensive good faith efforts, American determined that it could not reasonably accommodate Ms. Littlejohn such that she could perform all of the essential functions of her position with or without reasonable accommodation or any other position she was qualified to perform and that she desired, and in October 2020 (after the implementation of a hiring freeze and substantial furloughs and reductions in force caused by the COVID-19 pandemic), American separated Littlejohn from employment.

Among other accommodations American considered for Ms. Littlejohn was the use of screen reading software called Job Access With Speech ("JAWS"). Screen reading software attempts to read information on a computer screen verbally to assist the blind and visually impaired with navigating computer screens. Screen reading software is not compatible with all computer programs or applications.

Over the years, American has afforded the Texas Workforce Commission ("TWC") and its Vocational Rehabilitation Services[1] access to its then-current computer systems and applications

---

1    The TWC's Vocational Rehabilitation Program helps people with disabilities get ready for, find, or keep a job. It helps adults with disabilities of all ages. It also helps young students with disabilities prepare for life after school. The program also assists businesses in hiring and supporting employees with disabilities. *See* https://www.twc.texas.gov/programs/vocational-rehabilitation.

so that it could examine, test, and review American's technology for accessibility with JAWS or other screen reader software. Those tests returned findings of incompatibility. In addition to requesting that the TWC once again test American's software for Ms. Littlejohn, American engaged a third-party, The Paciello Group ("TPG")—who was recommended by the National Federation of the Blind—to conduct an accessibility audit. TPG determined that American's reservations software and applications were incompatible with JAWS. Additionally, TPG was unable to state with any reasonable certainty to American that it could make the software compatible, even if American spent significant time and hundreds of thousands of dollars on the project. Nor could TPG state with any reasonable certainty that any progress made towards compatibility could be sustained due to the constant upgrades and updates applied to American's software and applications. And, even if all of the technological challenges could be resolved satisfactorily, the manner in which screen readers have to read out the seat map of an aircraft which may have hundreds of seats with numerous characteristics (e.g., emergency or exit row seat, extra leg room seat, first class, business class, premium class, basic or economy) and the amount of time it took to read out all of the seat options on the aircraft seat map would not have allowed Littlejohn to meet the productivity standards and average handling times for the position. As a result, American concluded that it could not accommodate Ms. Littlejohn in her Reservations Representative position through the use of JAWS. And, given Ms. Littlejohn's limited education, work history, skills and qualifications, American was unable to identify other open available positions that she was qualified for and for which she could perform all of the essential functions of the job with or without accommodation.

The EEOC's lawsuit is based, in part, on the inaccessibility of American's software and applications used in various reservations, baggage resolution and customer service roles. *See, e.g.,*

ECF No. 1 at 7–8 ("Defendant engaged in unlawful employment practices . . . by denying Littlejohn one or more reasonable accommodations, including but not limited to the use of visual assistive technology . . .").

Littlejohn filed her charge of discrimination with the EEOC in March 2021. Notably, in June 2024, the EEOC notified Ms. Littlejohn that after its investigation of Ms. Littlejohn's charge of discrimination  "it does not appear that further investigation would result in a cause finding." App. 044—046. The EEOC proposed to Ms. Littlejohn that it intended to close its investigation and issue a notice of right to sue that would have permitted Ms. Littlejohn to pursue her claims in court. In response to the EEOC's predetermination, Ms. Littlejohn stated—without any evidence to support her statements—that it should be really easy for American to make the software compatible because it is a global company and that it would only cost American a few thousand dollars to do so.

Even then, the EEOC never, over the course of its four-year investigation, requested to inspect American's software or applications. Rather, on Ms. Littlejohn's unfounded and unsupported statements, the EEOC reversed its determination and issued a "Cause" finding adverse to American. Now, more than five years since the EEOC has had this file and ten years after the operative events that began in 2016, the EEOC has requested to inspect American's software and applications from the period of December 16, 2016, to October 20, 2020 (hereinafter, the "Relevant Period"). *See* EEOC's Request for Inspection App. 001—006. American should be granted a protective order against EEOC's request for four reasons.

*First*, the software and applications as they existed over nine years ago simply no longer exist in the form they existed at the relevant time. *Second*, American's current software and applications are not relevant to this case nor is an inspection or examination of American's current

3

systems using current screen reader software relevant. *Third*, the request for inspection is unreasonably cumulative and duplicative because the information can and has been sought from the independent accessibility experts recommended by the National Federation of the Blind and Texas Workforce Commission Vocational Rehabilitation Services that evaluated American's systems during the relevant time period. Indeed, American has produced in this litigation the accessibility report of The Paciello Group ("TPG"), and the EEOC has gone even further to subpoena TPG for its report, communications, and working papers from that 2018 independent accessibility review and indicated it will take the 30(b)(6) deposition of TPG. And *fourth*, the request for inspection improperly seeks to impose obligations on American that are not permitted by Rule 34 and are too onerous.

## II.    LEGAL STANDARD

Rule 26(c) authorizes a protective order to shield any person from "annoyance, embarrassment, oppression, or undue burden or expense," including by forbidding discovery, limiting its scope, or prescribing conditions for disclosure. FED. R. CIV. P. 26(c)(1); *Whole Woman's Health v. Smith*, 896 F.3d 362, 372–73 (5th Cir. 2018). "[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (citation omitted). A protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). A court has broad discretion in determining whether to grant a motion for a protective order. *See Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985). Further, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if

it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C). And Rule 26(b)(1) states "[] the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

### III.    ARGUMENT AND AUTHORITIES

Ms. Littlejohn filed her charge with the EEOC in March 2021. ECF No. 1. And the EEOC brought this suit in September 2025. *Id.* During its investigation, the EEOC was presented with evidence that: (1) multiple entities, ***including the Texas Workforce Commission*** (the "TWC"), had analyzed and determined that American's reservations software and applications were incompatible with JAWS; (2) there was no reasonable certainty, regardless of the time and money expended by American, that American's software and applications could be made compatible or that any compatibility could be sustained; and (3) even if American's software and applications could have been made compatible, JAWS would operate too slowly for Ms. Littlejohn to meet the productivity standards and handling times required for the position. The EEOC did not inspect or request to inspect any of American's software or applications during its investigation in 2021, 2022, 2023, 2024, or 2025. Nevertheless, despite all evidence to the contrary, the EEOC determined that American failed to accommodate Ms. Littlejohn through the use of JAWS.

Now, more than five years after the filing of the charge, the EEOC seeks to inspect American's software and applications as they existed throughout a nearly four-year window of time starting over nine years ago. *See* App. 001—006. The Court should issue a protective order preventing the requested inspection for three reasons. *First*, as stated in American's response to the EEOC's First Request for Production, the software and applications as they existed during the Relevant Period do not exist. App. 012—043 at pp. 18–19. *Second*, to the extent the EEOC intends to inspect American's current software and applications with current screen-reading software, the inspection is irrelevant to this lawsuit. Third, the request for inspection is unreasonably cumulative and duplicative because the information can and has been sought from TPG and the TWC. And fourth, the request for inspection exceeds what is permitted by Rule 34.

## A. The 2016–2020 Software and Applications Do Not Exist.

In its First Request for Production, the EEOC requested that American produce "virtual machine images of each version of application or software that Defendant believes or contends would have to be adopted or configured for compatibility with screen reader software" so that Ms. Littlejohn could perform the essential functions of a series of jobs during the Relevant Period. App. 012—043 at pp. 18–19. In response to this Request for Production, American explained that due to the "persistent updates and changes made to the systems and software, neither the frontend nor the backend of any relevant software or application [] exist[ed] in the form it would have while [Ms. Littlejohn] was employed at American by the time she filed her charge with the EEOC."[2] App. 012—043 at pp. 18–19. American further explained that "even if American could duplicate

---

2    Simply, the frontend of a software or application is what the user sees, and the backend is the code and other "invisible" data that reacts to the user and produces the requested information or action.

the frontend[3] of the relevant software and applications as they existed . . . it would be impossible for American to duplicate the necessary backend." *Id.* Consequently, American responded "none exist." *Id.*

Despite this, in its Request for Inspection, the EEOC now seeks to inspect at least fifty-eight (58) of American's software applications for the Relevant Period. App. 001—006; App. 007—008. To be within the scope of Rule 26(b), a requested inspection must be "relevant to any party's claim or defense and proportional to the needs of the case, considering . . . the parties' relative access to relevant information . . . and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1). Here, the software and applications as they were during the Relevant Period do not exist and cannot be recreated. *See* App. 009—011; *see also* App. 029—30 at pp. 18–19. Some of the software and applications have been phased out. App. 009—011. And the ones that American still uses have been upgraded, updated, and otherwise changed numerous times over the past six years. *Id.* Therefore, there is nothing for the EEOC to inspect. However, despite knowing this, the EEOC still issued its request for inspection and has declined to withdraw the same. Consequently, American respectfully requests that the Court issue a protective order protecting American from the EEOC's Request for Inspection.

**B.       American's Current Software and Applications are Irrelevant to the EEOC's Claims.**

While the Request for Inspection explicitly sets out the Relevant Period, in an abundance of caution, American also seeks a protective order insofar as the EEOC wishes to test the current versions of American's software and applications with the current version of screen-reading

---

3       American has since learned that it definitively cannot recreate the frontend. App. 010 at ¶5.

software. As set forth in the EEOC's Complaint and the Request for Inspection, the relevant time period in this case is December 2016 to October 2020. However, the EEOC also requests that American professionally install a current, updated version of JAWS so the EEOC may conduct its inspection. App. 004 at ¶ 4. The compatibility of American's software and applications—over five years after the Relevant Period—with the most updated version of screen-reading software is irrelevant to whether the software and applications from 2016–2020 were compatible with the screen-reading software available at the time. Moreover, the EEOC did not request to inspect the software at any point during its investigation in 2021, 2022, 2023, 2024, or 2025. Only now, over five years later, is EEOC seeking to test the compatibility of American's software and applications from 2016–2020.

Whether the present versions of the software and applications are compatible with the current version of JAWS has no bearing on whether, during the Relevant Period, "Defendant engaged in a continuing course of unlawful employment practices . . ." ECF No. 1 at 3. And courts routinely reject requests for inspection—and opinions based on outdated inspections—when the thing to be inspected is not the same as it was during the relevant time period. *See Meyer v. City of Chehalis*, No. 3:22-CV-05008, 2023 WL 4157661, at *3 (W.D. Wash. June 23, 2023) (rejecting a city's request to inspect the plaintiff's current service dog because it would "not shed light on the training of his prior service dog at the time of the City's initial denial of Plaintiff's reasonable accommodation request."); *see also Bailey v. Stanley Access Techs., Inc.*, No. 3:14-CV-72-SA-JMV, 2015 WL 6828921, at *10 (N.D. Miss. Nov. 6, 2015) (holding that the expert opinion based on the inspection of a door sensor "eighteen months after the incident is not relevant, and may tend to mislead the jury because, 'it's what was happening at the time of the accident that counts.'"); *see also LeBoeuf v. K–Mart Corp.,* 888 F.2d 330, 333 (5th Cir. 1989) (affirming the exclusion of

8

expert testimony based on an inspection of a store premises two years after an accident because the relevant issue before that Court was whether a dangerous condition existed at the time of the accident).

Simply, the compatibility of American's software and applications in 2026 with the 2026 version of JAWS is irrelevant to American's alleged failure to accommodate Ms. Littlejohn six to ten years ago. Consequently, to the extent the EEOC seeks to test current versions of American's software and applications, it is irrelevant to the facts of this case, and any inspection of the same cannot serve as the basis for the EEOC's expert's opinion.

The EEOC elected to ignore all relevant evidence, in favor of an unsupported letter from Ms. Littlejohn, and brought this lawsuit without requesting to inspect American's software and applications itself. The Court should not allow the EEOC to subject American to an expensive and burdensome process so that it can try to justify that decision through the testing of upgraded and irrelevant software with an upgraded and irrelevant screen-reading application. Thus, American respectfully requests that the Court enter a protective order to stop the EEOC from seeking to enforce its Request for Inspection to the extent it seeks to evaluate American's current software and applications.

**C.      The Request for Inspection is Unreasonably Cumulative and Duplicative.**

"[T]he court must limit the frequency or extent of discovery ... if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative. . . ." or not proportional to the needs of the case. FED. R. CIV. P. 26(b)(2)(C)(i). Here, the request for inspection is unreasonably cumulative and duplicative and not proportional because the information sought can be obtained from the TPG report, which has been produced to the EEOC. The TPG report is a source that is more convenient, less burdensome, and less expensive. The TPG report is essentially the

compatibility analysis the EEOC now seeks, but it was prepared during the Relevant Period and on the software and applications as they existed in the Relevant Period. And that independent audit and report were conducted and prepared by the "global leader in blind and low vision accessibility." *See* https://vispero.com/ (TPG is a Vispero Brand).

The EEOC already possesses a detailed compatibility analysis of the relevant software and applications from the Relevant Period, done by a highly respected company.[4] Therefore, it is unreasonably duplicative and cumulative for the EEOC to seek another compatibility analysis on either software that does not exist or is not relevant. As such, American seeks a protective order preventing EEOC from enforcing its request for inspection.

**D.     The Request to Inspect Goes Beyond What Is Permitted By Rule 34.**

Rule 34 permits a party to request inspection of documents, electronically stored information, and tangible things within the responding party's "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). The rule does not, however, authorize a requesting party to conscript the responding party's workforce into service as unpaid consultants, technical support staff, or de facto deposition witnesses. Yet that is precisely what the EEOC's Request for Inspection demands. The EEOC's Request makes five extraordinary demands of American: (1) American must make available "at all times" knowledgeable personnel for each of the fifty-eight software applications and each relevant position—personnel who must, at no cost to the EEOC, "direct and assist" the EEOC's expert, respond to any questions the expert may pose, and personally demonstrate every user interface; (2) American must simultaneously make available an IT Administrator to

---

4       Additionally, testing was done by the TWC during the same time period. American has subpoenaed those records from the TWC and will produce them to the EEOC upon receipt, making this request further cumulative and duplicative. And, the EEOC has requested deposition dates when American is available to participate in the deposition of the TWC representative that conducted the accessibility testing of American's software in 2015 and 2017.

troubleshoot any technical problems the EEOC's expert encounters; (3) American must compile and provide detailed technical information regarding each piece of software; (4) American must provide remote access infrastructure to the EEOC's expert, including the purchase and professional installation of the current version of JAWS, creation of user profiles for the expert, and establishment of a secure VPN connection; and (5) American must make all of the foregoing available for ten full business days, up to nine hours per day—a total of ninety hours of on-demand access—and an unlimited amount of additional business days added should technical issues arise. App. 003—005 at pp. 3–5. These demands transform what should be a straightforward inspection into an invasive, open-ended occupation of American's IT resources and personnel.

The EEOC is aware that most of its requests are improper under Rule 34. In *EEOC v. BNSF Railway, Co.*, the court rejected comparable requests. *E.E.O.C. v. BNSF Ry. Co.*, No. 2:12-CV-02634-JWL, 2014 WL 172141 (D. Kan. Jan. 15, 2014). The court in *BNSF*, as relevant here, found that the EEOC had exceeded the scope of what is permitted under Rule 34 by requesting that BNSF "answer[] questions during the analysis," and "identify, describe, and facilitate the performance of certain tasks and identify particular work operations, tools, and equipment." *Id.* at 2–3. In reaching its conclusion, the court provided that the EEOC is "not entitled to use a Rule 34 inspection as an alternative to depositions or written discovery." *Id.* at 3. The EEOC seeks to do the same thing here by requiring that American provide at least two employees at all times, for at least ninety hours, to troubleshoot, demonstrate, assist, and answer any questions the EEOC's expert might have. *See* App. 001—006 at pp. 3–5. The EEOC's request would "disrupt the workplace, and is essentially a request that [American] facilitate roving depositions of [its] employees." *BNSF Ry. Co.*, 2014 WL 172141, at *3. Such a request is not permitted by Rule 34. *Id.* Thus, not only does the EEOC seek to inspect software and applications that either no longer exist or are irrelevant,

but its request also significantly exceeds what is permitted under Rule 34. Therefore, the Court would also be justified in issuing a protective order on this ground.

The magnitude of the EEOC's imposition underscores its impropriety. The Request demands that American provide two employees—at minimum—for ninety hours of "inspection." That amounts to 180 total *person*-hours of employee time devoted to answering questions, demonstrating software functionality, and assisting the EEOC's expert outside of any formal discovery process. To put this in perspective, 180 hours of employee interrogation time is the equivalent of approximately twenty-six seven-hour depositions—more than the total number of depositions taken in most employment discrimination cases. The Federal Rules impose strict limits on depositions for good reason: to protect parties from the oppression and expense of unlimited interrogation. See Fed. R. Civ. P. 30(a)(2), (d)(1). The EEOC cannot be permitted to achieve through the back door of Rule 34 what the Rules expressly prohibit through the front door of Rule 30. Moreover, several of the software applications at issue are developed, updated, and managed by third-party vendors over whom American has no control. App. 009—010. The EEOC's demand that American make available personnel "with knowledge of each relevant software" would require American either to compel the attendance of third-party vendors—which it cannot lawfully do—or to divert its own employees from their regular duties to acquire specialized knowledge of third-party systems solely to satisfy the EEOC's fishing expedition. Either outcome imposes an undue burden that far exceeds any legitimate discovery need and is grossly disproportionate to the needs of this case. Accordingly, even setting aside the threshold problems of relevance and the non-existence of the software sought, the Court should issue a protective order because the Request for Inspection is facially improper under Rule 34 and imposes burdens that no litigant should be required to bear.

## IV.    CONCLUSION

Over the years, American has requested that the TWC test and evaluate its software and applications for screen-reader compatibility on multiple occasions. Those tests resulted in a finding of incompatibility. Despite this, when Ms. Littlejohn requested an accommodation, American once again requested that the TWC test and evaluate American's software and applications. That 2017 test again resulted in a finding of incompatibility. But American did not stop there. It engaged with the National Federation of the Blind to hire its recommended tester, TPG. American then paid for and facilitated an audit of its software and applications by TPG in the Summer of 2018. TPG reported that the software and applications were incompatible with JAWS, and it could not state with reasonable certainty that such incompatibility could be rectified or, if rectified, sustained. Therefore, American determined in 2019 that it could not accommodate Ms. Littlejohn through the use of JAWS. American continued to consider different accommodations for Ms. Littlejohn until it separated her employment in October 2020 in the wake of the COVID-19 pandemic.

By the time Ms. Littlejohn filed her complaint in March 2021, American's software and applications no longer existed in the state in which they had existed in October 2020—much less in the state they existed in when American determined it could not accommodate Ms. Littlejohn through the use of JAWS in early 2019, or when the tests occurred in 2017 and 2018. The EEOC cannot inspect something that does not exist. But the EEOC is not left to simply take American's word for it, as American has produced all testing results and reports that it has from the Relevant Period.[5]

---

5    Again, American has subpoenaed older reports from the TWC and will produce them to the EEOC upon receipt; making this request further unreasonably duplicative.

Moreover, to the extent the EEOC seeks to test American's current software and applications, they are irrelevant as they have been subject to at a minimum, over five years of updates and upgrades. ***The EEOC waited over five years*** to request to inspect American's software and applications. In the interim, it determined that it was unreasonable for American to deny the use of JAWS to Ms. Littlejohn, despite evidence to the contrary. The EEOC cannot now backfill a justification for that decision by testing irrelevant software and subjecting American to a request for inspection that exceeds what is permitted by Rule 26 and 34. Finally, the request for inspection is unreasonably cumulative and duplicative because it seeks information that it has already been provided by American. The information sought can be obtained from the TPG report, which was done during the Relevant Period on the software and applications as they existed then. Consequently, American respectfully requests that the Court grant its motion for a protective order preventing the EEOC from seeking to enforce its request for inspection; and for any other and further such relief to which American is entitled.

Respectfully submitted,

_/s/ Russell D. Cawyer_
Russell D. Cawyer
State Bar No. 00793482
Lars L. Berg
State Bar No. 00787072
John R. Gillett
State Bar No. 24136859
**KELLY HART & HALLMAN LLP**
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Telephone: (817) 878-3562
Facsimile: (817) 335-2820
Email: russell.cawyer@kellyhart.com
Email: john.gillett@kellyhart.com
Email: lars.berg@kellyhart.com

**ATTORNEYS FOR DEFENDANT
AMERICAN AIRLINES, INC.**

14

**CERTIFICATE OF CONFERENCE**

I certify that I conferred with counsel for the EEOC by telephone on April 13, 2026. No agreements could be reached and, therefore, this Motion is presented to the Court for consideration.

*/s/ Russell D. Cawyer*
Russell D. Cawyer

**CERTIFICATE OF SERVICE**

On this day, April 16, 2026, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5 (b)(2).

/s/ *Russell D. Cawyer*
Russell D. Cawyer